## CIRCUIT COURT OF CHESTERFIELD COUNTY

Chippenham Square
Acquisitions, L.L.C.

v.

The Stop & Shop
Supermarket Co., L.L.C.

August 11, 2004

Case No. CH03-1428

BY JUDGE HERBERT C. GILL, JR.

On July 19, 2004, the parties, by counsel, appeared before the Court on Chippenham Square Acquisitions' Petition for Declaratory Judgment. The Court took the matter under advisement and now issues its ruling.

*Facts*

Based upon the parties' stipulation, the relevant facts are as follows.

On April 2, 1981, Jamestown Properties, Inc. ("Jamestown") and The Stop & Shop Supermarket Company, L.L.C. ("Stop & Shop") entered into a commercial lease (the "First Lease") for a building in a shopping center on Midlothian Turnpike. The lease is for a term of twenty-five years and is due to expire on August 31, 2007.

On June 4, 1988, Stop & Shop assigned its interest in the First Lease to Bradlees Tidewater, Inc. ("Bradlees). Subsequently, on March 7, 1989, Bradlees assigned its interest in the First Lease to Ames Department Stores, Inc. ("Ames"). Following the assignment, Ames filed for bankruptcy, and on December 29, 1992, rejected the lease pursuant to its Chapter 11 reorganization.

On March 16, 1993, Chippenham Partners, Ltd., successor-in-interest to Jamestown, entered into a lease (the "Second Lease") with Burlington Coat Factory Warehouse of Chippenham, Inc. ("Burlington"). This lease covered

the same premises as the First Lease and was to expire on August 31, 2007. Prior to entry of this lease, neither Chippenham Partners nor Stop & Shop issued a notice of default with respect to the First Lease.

On April 30, 2003, Burlington notified Chippenham Square Acquisitions, L.L.C. ("Chippenham"), successor-in-interest to Chippenham Partners, that it elected to terminate the lease effective April 30, 2004, pursuant to Article XX of the Second Lease.

On November 26, 2003, Chippenham filed this declaratory judgment action to determine the parties' rights with respect to the First Lease.

## Question Presented

Is Stop & Shop discharged from its contractual liabilities under the First Lease as a consequence of Chippenham Partners' execution of the Second Lease?

## Discussion

Chippenham argues that, by entering into the Second Lease, it was exercising its self-help rights to mitigate damages under the First Lease.

Section 19.2(a) of the First Lease, entitled "Self-Help Rights," reads as follows:

> If, after the Commencement Date, either Landlord or Tenant defaults in making any payment to or for the benefit of the other (whether required by this lease or otherwise) or in the performance of any other obligation imposed on it by this lease, and shall not cure such default within 30 days after written notice thereof (or, if the default requires more than thirty (30) days to be cured, if the defaulting party does not begin to cure the default within that period and then diligently prosecute the cure to completion), then the aggrieved party (without waiving any claim of breach or for damages) at any time thereafter may make such payment or cure such other default for the account of the defaulting party.

As Chippenham did not provide Stop & Shop with any written notice of default, Chippenham is precluded from proceeding under this section.

Also, as there has been no showing that Stop & Shop abandoned the premises, Chippenham cannot proceed under the theory that a landlord can re-let the premises to mitigate his damages without accepting a surrender of the

property. See *Hoster-Columbus Associated Breweries Co. v. Stag Hotel Corp.*, 111 Va. 223, 68 S.E. 50 (1910).

Therefore, the Court must look at whether the entry of a new lease on the same premises effected a surrender of the original lease by operation of law. The Court finds that it does.

In *Cooke v. Wise*, 13 Va. (3 Hen. & M.) 463 (1809), the Supreme Court of Virginia held that a subsequent lease concerning the same property acts as a surrender of the original lease and discharges the tenant from any further liability.

In *Cooke*, Wise leased to Cooke a dwelling house for the term of five years. Approximately three years later, Cooke verbally demised the premises to McRae for the remainder of the five-year term. Subsequently, Wise, with McRae's agreement, leased the dwelling house to Groverman for a period beyond the five-year term of the original lease. After Groverman failed to pay rent, Wise sued Cooke for the rent in arrears up to the ending date of the lease between Wise and Cooke.

Finding that the verbal transaction between Cooke and McRae was a sublease, the Court permitted Wise to recover against Cooke as "the act of the under tenant [Groverman] could not, of itself, affect the contract between [Wise] and [Cooke]." *Id.* at 468.

The Court held, however, that, had the deal between Cooke and McRae been an assignment, "the subsequent lease from [Wise] to Groverman . . . would operate as a surrender of the premises to [Wise], and consequently discharge [Cooke] from any liability to him. . . ." *Id.*

The Supreme Court of Virginia reached the same conclusion in *Prestons v. M'Call*, 48 Va. (7 Gratt.) 121 (1850). In *Prestons*, John S. Preston & Co. leased to Overly & Sanders their salt factory. Less than a year later, Overly & Sanders assigned their interest in the lease to M'Call. The following day, Preston and M'Call entered into a separate lease concerning the same property. The Court held that the new lease between Preston and M'Call "operated as a surrender" of the lease between Preston and Overly. *Id.* at 131.

The Court finds that the Second Lease between Chippenham Partners and Burlington effected a surrender of the First Lease between Jamestown and Stop & Shop by operation of law and thereby relieved Stop & Shop of any liability for rent after March 16, 1993, the date the Second Lease was executed.